**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| EXCLUSIVE MOTORING WORLDWIDE, INC. A Florida Corporation     Plaintiff, v. ALEX VEGA An individual,     Defendant. _____ | ) ) ) ) ) ) ) ) ) ) ) ) )     Case No._____ |

## <u>COMPLAINT</u>

Plaintiff, Exclusive Motoring Worldwide, Inc. (hereinafter "Exclusive Motoring"), hereby makes and brings the following complaint against Defendant, Alex Vega as follows:

1.      This is an action for an award of damages and for injunctive relief arising from violations of the Lanham Act 15 U.S.C. §1125(a) and §1125(d) (unfair competition/trademark infringement, and cybersquatting), and violations of Florida law including but not limited to breach of a covenant not compete, conversion, fraud, misappropriation of trade secrets, and civil theft.

2.      Plaintiff Exclusive Motoring is a Florida corporation with a principal place of business at 1951 NW 97 Avenue, Miami, Florida 33172.

3.      Defendant Alex Vega is an individual who upon information and belief resides at 10868 NW 85 terrace, Miami, Florida 33178.

4.      This Court has federal question jurisdiction over this controversy pursuant to 28 U.S.C. §1331 because portions of this claim arise pursuant to the Lanham Act, 15 U.S.C. §1125(a)

and §1125(d).   This Court also has supplemental jurisdiction over the non-federal question claims pursuant to 28 U.S.C. §1367 because those claims are interrelated to the federal claims.

5.        Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(1)(2) in so much as the acts giving rise to this cause of action occurred in this District.

I.        **FACTUAL ALLEGATIONS**

A. Background

6.        Prior to the acts complained of herein, Defendant Vega was the owner and operator of Auto Couture, Inc. d/b/a "Exclusive Motoring" (hereinafter "Auto Couture"), a business specializing in the customization and modification of high-end vehicles.

7.        In or about early 2009, Auto Couture was the client of Doral Collision Center, Inc. (hereinafter "Doral Collision"), a business owned by Rolando Ramirez, the owner of Plaintiff Exclusive Motoring.

8.        During the term of the business relationship between Auto Couture and Doral Collision, Auto Couture amassed outstanding invoiced owed and payable to Doral Collision in the amount of approximately $92,500.00.

9.        Unable to satisfy the debt to Doral Collision, Auto Couture agreed to a business deal wherein Auto Couture would sell and transfer all of its assets to Doral Collision for the sale price of $92,500.00, Auto Couture would cease doing business, Mr. Ramirez would open a new company under the name "EXCLUSIVE MOTORING" or "EXCLUSIVE MOTORING WORLDWIDE," Mr. Ramirez's business would subsume Auto Couture's former business, and Defendant Vega would become an employee of Mr. Ramirez's new business.

10.        In furtherance of the above business plan, a Bill of Sale was executed on November 30, 2009 transferring all of Auto Couture's assets to Doral Collision.   See Exhibit A.   With no

assets or equipment with which to do business, Auto Couture ceased operation.

11.     Soon thereafter, Mr. Ramirez incorporated Plaintiff Exclusive Motoring and as promised hired Defendant Vega as an employee.

B.  Plaintiff's Marks

12.     Plaintiff Exclusive Motoring operates its business under the inherently distinctive common law trademarks "EXCLUSIVE MOTORING," "EXCLUSIVE MOTORING & Design," "EXCLUSIVE MOTORING WORLDWIDE," and/or "EXCLUSIVE MOTORING WORLDWIDE & Design" (hereinafter "Plaintiff's Marks") as reproduced below in figures 1 & 2:



(Figure 1).



(Figure 2).

13.     Under its Marks, Plaintiff offers customization and/or modification of high-end vehicles.

14.     Through the Plaintiff's long and continuous use of its Marks, as well as through its advertising of the Marks, Plaintiff's Marks have acquired secondary meaning and distinctiveness.

15.     Plaintiff's rights in and to the Marks date back to September 2005 or earlier, and in

no event later than December of 2009 when it began operation and use of the Marks in commerce in its own name.   Specifically, Plaintiff's rights in the Marks date back via assignment from Auto Couture to September 27, 2005, or earlier, when Auto Couture began using the Mark "EXCLUSIVE MOTORING" in commerce as a "d/b/a."   See Exhibit B.

16.     Upon information and belief, Auto Couture conflated the idea of "d/b/a" with a trademark, used the Marks as trademarks in commerce, and assigned any and all rights in and to the "d/b/a" and the Marks to Plaintiff's predecessor in interest under the aforementioned Bill of Sale.   See Exhibit A.   Doral Collision thereafter assigned the same to the Plaintiff.

C.   Defendant Vega's Employment and Covenant Not to Compete

17.     Defendant Vega was an employee of Plaintiff Exclusive Motoring and worked for the sole benefit and at the discretion of Exclusive Motoring.   See Exhibit C (salary paystubs showing that Defendant Vega received weekly salary as an employee of the Plaintiff).

18.     In or about October of 2011, the landlord from whom Plaintiff Exclusive Motoring is leasing its current location went into foreclosure and the future of the space became uncertain. As such, Mr. Ramirez began considering either negotiating for the purchase of the site, or for the lease or purchase of a new site for the business.   In either event, Mr. Ramirez calculated that he would soon be making a large investment in the future of the Exclusive Motoring's business and decided to take certain steps to protect his investment.

19.     Among the steps that Mr. Ramirez made was to prepare a covenant not to compete for all of the Exclusive Motoring employees to review and sign.

20.     On Wednesday, October 26, 2011, Exclusive Motoring called a meeting of all of its employees, including Defendant Vega.

21.     At that time, Exclusive Motoring requested that each employee sign the covenant

not to compete titled "Non-Compete Agreement."

22.     All employees were given an opportunity to review the document before signing. In fact, Defendant Vega was provided with a copy of the covenant not to compete ahead of time so that his attorney, Hoss Hernandez, Esq., could review and comment on the document prior to signature.   Prior to signing the document, Mr. Vega stated to Mr. Ramirez that he had provided a draft of the document to his counsel.

23.     After discussion, Defendant Vega signed the "Non-Compete Agreement" on Wednesday, October 26, 2011 in front of witnesses including, but not limited to, Ana B. Perez. See Exhibit D.

24.     The Non-Compete Agreement prohibits Defendant Vega, for a period of two (2) years from his termination as an employee of Plaintiff Exclusive Motoring, from among other things:

a.   "Intentionally act[ing] in any manner that is detrimental to the relations between the [sic] Exclusive Motoring Worldwide, Inc. and its clients, employees and/or contractors."   Id.

b.   "Solicit, without written approval from Exclusive Motoring Worldwide, Inc. any client or prospective client of Exclusive Motoring Worldwide, Inc. for a period of 2 two years after termination of your employment for the purpose of providing or selling to said client or prospective client any products or services, which are similar to those sold or provided by Exclusive Motoring Worldwide, Inc. at the time of your termination." Id.

c.   "While employed by Exclusive Motoring Worldwide, Inc., and for 2 two years after the termination of employment, directly or indirectly hire any employees,

contractors, or consultants of Exclusive Motoring Worldwide, Inc." <u>Id</u>.

25.     On Thursday, October 27, 2011, after Exclusive Motoring conducted an internal review of its accounts, it was determined that many of the clients with whom Defendant Vega was dealing had considerable open accounts receivable owing to Plaintiff Exclusive Motoring.

26.     It is contrary to Exclusive Motoring's policy to allow clients to amass extensive accounts receivable, and Defendant Vega had previously been informed that it was contrary to company policy to deliver any finished vehicles to clients prior to full payment of invoices.

27.     Mr. Vega was thereafter instructed to provide contact information for all clients of Exclusive Motoring with whom he had direct contact so that efforts could be made to collect on the accounts receivables.

28.     Defendant Vega proceeded to provide false and/or incorrect contact information for many of the clients.

29.     On Friday, October 28, 2011, Plaintiff Exclusive Motoring determined that Defendant Vega was either attempting to deceive Exclusive Motoring by providing false client contact information, or was otherwise incompetent in as much as he was not maintaining accurate contact information for customers who had been allowed to take delivery of finished vehicles prior to payment.

30.     Irrespective of whether Defendant Vega was being purposefully deceitful or was merely an incompetent employee, Exclusive Motoring determined that it could no longer employ Defendant Vega and terminated his employment at the close of business on October 28, 2011.

31.     Soon after his employment at Plaintiff Exclusive Motoring was terminated, Defendant Vega entered into a campaign of wrongful and unlawful acts designed to damage Plaintiff Exclusive Motoring.

D.  Defendant Vega's Wrongful Acts

32.     Upon information and belief, after his termination from employment with Plaintiff Exclusive Motoring, Defendant Vega immediately began attempting to compete with Exclusive Motoring in the high-end automobile customization business.

33.     Defendant Vega has access to a customer database of Exclusive Motoring's clients. This database is found on a laptop computer belonging to Plaintiff Exclusive Motoring which was issued to Defendant Vega as part of his employment with the Plaintiff.

34.     Despite demands by Plaintiff for return of the laptop computer, Defendant Vega has failed/refused to return it.

35.     Upon information and belief, Defendant Vega is accessing the customer database and is soliciting business from Plaintiff Exclusive Motoring's clients and offering services which directly compete against those offered by the Plaintiff.

36.     Upon information and belief, immediately after his employment with Plaintiff Exclusive Motoring was terminated, Defendant accessed Plaintiff's domain name and website account, changed the passwords to the account, blocked Plaintiff's access to its www.exclusivemotoring.com and www.exclusivemotoringworldwide.com domain names, modified the websites appearing on the domain names to remove the Plaintiff's contact information, modified the websites appearing on the domain names to display the Defendant's contact information, and changed the registrant of the domain names to Domains By Proxy in an attempt to hide his wrongful acts. See Exhibit E.

37.     Upon information and belief, after termination of his employment with the Plaintiff, Defendant Vega has continued to hold himself out to customers, potential customers, vendors, and the public generally as "EXCLUSIVE MOTORING."

38.     Upon information and belief, after termination of his employment with the Plaintiff, Defendant Vega has and continues to deliver Plaintiff's invoices to clients for payment of work done by the Plaintiff, has collected the money owed under the invoices under the false pretense that he is "Exclusive Motoring," and has failed/refused to return the funds to Exclusive Motoring.

39.     Defendant Vega has refused to return to Plaintiff Exclusive Motoring certain "wheel-take-offs"[1] entrusted to Plaintiff Exclusive Motoring by clients with whom Plaintiff has written work orders and has invoiced. See Exhibit F.

40.      Such wheel-take-offs were entrusted to Plaintiff Exclusive Motoring who in turn entrusted the wheel-take-offs to its employee Defendant Vega on the express understanding that Defendant Vega was holding the wheel-take-offs as an agent and employee of Plaintiff Exclusive Motoring.

41.     Defendant Vega's wrongful acts have and continue to damage the Plaintiff.

42.     Defendant Vega's wrongful acts are causing irreparable harm to the Plaintiff, such that and award of damages alone cannot make the Plaintiff whole.

43.     Absent immediate Court intervention in the form of a Rule 56(b) temporary injunction, a preliminary injunction for the term of the litigation, and ultimately a permanent injunction, Defendant will continue to engage in his campaign of wrongful acts and will continue to damage the Plaintiff.

44.     A motion for temporary and preliminary injunctive relief is being prepared contemporaneously with this Complaint and will be filed as soon as practicable.

---

[1] A "wheel-take-off" is the term used in the industry to describe the original wheel that has been removed from a car and replaced with a custom wheel.

## COUNT I – CYBERSQUATTING

45.     Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - 44 of this Complaint as though fully set out herein.

46.     Plaintiff is the owner of the inherently distinctive common law trademarks "EXCLUSIVE MOTORING," "EXCLUSIVE MOTORING & Design," "EXCLUSIVE MOTORING WORLDWIDE," and/or "EXCLUSIVE MOTORING WORLDWIDE & Design."

47.     Defendant Vega has registered or is otherwise using, with the bad faith intent to profit from the Plaintiff's Marks, the domain names www.exclusivemotoring.com and www.exclusivemotoringworldwide.com which are identical or confusingly similar to Plaintiff's Marks.

48.     Defendant Vega's use of these domain names is likely to cause confusion among the consuming public.

49.     Defendant Vega has no trademark rights in and to the Plaintiff's Marks.

50.     Defendant Vega is not making bona fide noncommercial use or fair use of the domain names and/or Marks as defined by federal trademark law.

51.     Defendant Vega is using the domain names with the intent to transfer or divert consumers away from Plaintiff and to his own competing services, both of which are advertised on the Internet.

52.     Defendant Vega has registered the domain names through Domains By Proxy thereby eliminating his own name and contact information from the "Who Is" data base.  See Exhibit E.   Such registration is done in an attempt to hide the Defendant's wrongful and bad faith actions.

53.     Defendant Vega has registered or used more than one domain name that is identical

or confusingly similar to the distinctive trademark(s) of the Plaintiff despite knowing that he has no rights to the domain names or the marks.

54.     Defendant's acts, spelled out in greater detail throughout this complaint, including but not limited to the Defendant's actions in violation of the covenant not to compete, the fact that the Defendant changed the password on the Plaintiff's domain name account, and the fact that the Defendant is wrongly holding himself out as the Plaintiff in order to collect money owed to the Plaintiff further evidence the Defendant's bad faith.

55.     The Defendant's acts constitute cybersquatting under the portion of the Lanham Act known as the Anticybersquatting Consumer Protection Act 15 U.S.C. §1125(d) (hereinafter the "ACPA").

56.     Defendant's actions are damaging the Plaintiff and causing irreparable harm to the Plaintiff, and will continue absent immediate Court intervention.

## COUNT II – UNFAIR COMPETITION/TRADEMARK INFRINGEMENT

57.     Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - 44 of this Complaint as though fully set out herein.

58.     Plaintiff is the owner of the inherently distinctive common law trademarks "EXCLUSIVE MOTORING," "EXCLUSIVE MOTORING & Design," "EXCLUSIVE MOTORING WORLDWIDE," and/or "EXCLUSIVE MOTORING WORLDWIDE & Design."

59.     The Plaintiff's Marks serve as indicators of the source of Plaintiff's services.

60.     Defendant Vega is, upon information and belief, holding himself out to consumers, vendors, and the public at large as "Exclusive Motoring."   Such acts constitute use of the "Exclusive Motoring" mark in commerce.

61.     Defendant's acts are likely to cause confusion among the consuming public.

62.     Defendants acts are wrongful and constitute unfair competition under 15 U.S.C. 1125(a).

63.     Defendant's actions are damaging the Plaintiff and causing irreparable harm to the Plaintiff, and will continue absent immediate Court intervention.

## COUNT III - UNJUST ENRICHMENT

64.     Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - 44 of this Complaint as though fully set out herein.

65.     Plaintiff has contracted to perform certain automotive customization services for certain clients.

66.     Plaintiff has performed said services.

67.     Plaintiff has issued invoices for services rendered.

68.     Defendant has wrongfully taken copies of the above referenced invoices, presented the invoices to the client for whom the work was performed, has held himself out as the party to whom payment is owed, and has wrongfully collected on such funds to his own advantage and at the disadvantage of the Plaintiff.

69.     The money collected by Defendant is money that was owed to the Plaintiff and not Defendant.

70.     Defendant has been unjustly enriched from his wrongful acts.

71.     Defendant's wrongful acts have damaged the Plaintiff.

## COUNT IV - FRAUD

72.     Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - 44 of this Complaint as though fully set out herein.

73.     Plaintiff has contracted to perform certain automotive customization services for

certain clients.

74.     Plaintiff has performed said services.

75.     Plaintiff has issued invoices for services rendered.

76.     Defendant has wrongfully taken copies of the above referenced invoices, presented

the invoices to the client for whom the work was performed, has held himself out as the party to

whom payment is owed, and has wrongfully collected on such funds to his own advantage and at

the disadvantage of the Plaintiff.

77.     The money collected by Defendant is money that was owed to the Plaintiff and not

Defendant.

78.     Defendant's misrepresentations were committed with the intent to deceive.

79.     Defendant has wrongfully collected on the Plaintiff's invoices with the intent to

commit fraud.

80.     Defendant's above acts constitute fraud.

81.     Plaintiff has been harmed by Defendant's wrongful acts.

## COUNT V - BREACH OF COVENANT NOT TO COMPETE

82.     Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - 44 of this

Complaint as though fully set out herein.

83.     Defendant was employee of the Plaintiff.

84.     Defendant received employment compensation from the Plaintiff in the form of

weekly salary.  See Exhibit C (paystubs indicating that the Defendant was paid a salary as an

employee).

85.     On October 26, 2011 Plaintiff informed Defendant along with all other Exclusive

Motoring employees that, in exchange for a continued offer of employment, all employees would

be required to sign a covenant not to compete restricting the employees from competing with the Plaintiff for a period of two (2) years within South Florida.

86.     The Defendant was provided with the covenant not to compete titled "Non-Compete Agreement."

87.     Defendant was given an opportunity to review the Non-Compete Agreement prior to signing.

88.     The Defendant signed the Non-Compete Agreement before witnesses included, but not limited to, Ana Perez.   See Exhibit D.

89.     Had Defendant refused to sign the Non-Compete Agreement he would have been terminated immediately on October 26, 2011.

90.     On October 28, 2011, after receiving from the Defendant false contact information for clients with outstanding balances owed to the Plaintiff, Plaintiff determined that the Defendant's employment with the Plaintiff should be terminated for either attempted deception of the Plaintiff or alternatively for simple incompetence.

91.     Defendant was terminated from his employment position with the Plaintiff at the close of business on Friday, October 28, 2011.

92.     Defendant received his ordinary salary for work done on October 26, 2011, October 27, 2011, and October 28, 2011.

93.     Had Defendant refused to sign the Non-Compete Agreement, Defendant would have been immediately terminated and would not have received salary beyond that earned as of October 25, 2011.

94.     Plaintiff and Defendant negotiated for and exchanged legally sufficient consideration for Defendant to enter into the Non-Compete Agreement.

95.     Upon information and belief, Defendant has, subsequent to termination of his employment with the Plaintiff, begun competing with the Plaintiff in direct violation of the Non-Compete Agreement.

96.     Upon information and belief, Defendant is wrongfully contacting Plaintiff's clients to solicit their business in direct breach of the Non-Compete Agreement.

97.     Upon information and belief, Defendant is wrongfully contacting Plaintiff's vendors seeking to contract them to provided services which would allow the Defendant to compete with the Plaintiff in direct breach of the Non-Compete Agreement.

98.     The Non-Compete Agreement signed by the Defendant includes a provision allowing for immediate injunctive relief without the need to prove irreparable injury or special damages.

99.     Plaintiff is being irreparably harmed by Defendant's wrongful acts.

100.    Plaintiff is being damaged on a continuing basis by Defendant's wrongful acts.

101.    Absent immediate Court intervention in the form of an injunction, the Defendant will continue to engage in wrongful acts designed to damage the Plaintiff.

## COUNT VI - REPLEVIN

102.    Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - 44 of this Complaint as though fully set out herein.

103.    Plaintiff is the rightful owner and/or possessor of certain property including one laptop computer issued to the Defendant by the Plaintiff for use in the Defendant's function as an employee of the Plaintiff, certain wheel-take-offs taken from client vehicles, and the www.exclusivemotoring.com and www.exclusivemotoringworldwide.com domain names.

104.    Defendant has no legal right to continued possession of the above described

14

property.

105.    Demand has been made for return of the property, but Defendant has refused.

106.    Plaintiff is being harmed by Defendant's refusal to surrender the property.

107.    Absent immediate Court intervention, Defendant will not return the property and Plaintiff will continue to be harmed.

## COUNT VII - CONVERSION

108.    Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - 44 of this Complaint as though fully set out herein.

109.    Plaintiff is the rightful owner/possessor of property including one laptop computer issued to the Defendant by the Plaintiff for use in the Defendant's function as an employee of the Plaintiff, certain wheel-take-offs taken from client vehicles, and money wrongfully collected by the Defendant owning on invoices issued by the Plaintiff.

110.    Defendant has wrongfully misappropriated the above property to his own use, control, and enjoyment.

111.    Defendant's acts have damaged the Plaintiff and will continue to damage the Plaintiff absent Court intervention.

## COUNT VIII - CIVIL THEFT

112.    Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - ** of this Complaint as though fully set out herein.

113.    Plaintiff is the rightful owner/possessor of property including one laptop computer issued to the Defendant by the Plaintiff for use in the Defendant's function as an employee of the Plaintiff, certain wheel-take-offs taken from client vehicles, money wrongfully collected by the Defendant owning on invoices issued by the Plaintiff, and the www.exclusivemotoring.com and

www.exclusivemotoringwordlwide.com domain names.

114.    Defendant has wrongfully misappropriated the above property to his own use, control, and enjoyment.

115.    Defendant's acts have damaged the Plaintiff and will continue to damage the Plaintiff absent Court intervention.

116.    Defendant's misappropriation of the above described property was done willfully and with the intent to deprive Plaintiff of such property.

117.    Defendant's wrongful acts constitute civil theft under Florida law.

118.    Plaintiff has sent statutory notice to Defendant and made demand for return of the property.   See Exhibit G.

119.    Defendant has failed/refused to return the property.

120.    Absent Court intervention, Defendant will continue to possess the property and to damage the Plaintiff.

121.    Pursuant to Florida law, Plaintiff is entitled to treble damages resulting from Defendants acts.

## COUNT IX - MISAPPROPRIATION OF TRADE SECRETS

122.    Plaintiff hereby incorporates the allegations set out in Paragraphs 1 - 44 of this Complaint as though fully set out herein.

123.    Plaintiff by and through its own efforts and the efforts of its employees acting in their capacity as agents of the Plaintiff, has collected a list of clients and preferred vendors (hereinafter "Plaintiff's Client and Vendor Database").

124.    Plaintiff treats its Client and Vendor Database as confidential.

125.    Plaintiff gains substantial advantage from maintaining the confidential nature of the

Client and Vendor Database.

126.   A copy of the Vendor and Client Database, or a partial version thereof, exists on the laptop computer issued to the Defendant for his use on behalf of the Plaintiff.

127.   Upon information and belief, subsequent to his termination as an employee of the Plaintiff, the Defendant has used and continues to use the Plaintiff's Client and Vendor Database to compete against the Plaintiff.

128.   The Defendant's misappropriation of the Client and Vendor Database constitutes misappropriation of trade secrets under Florida law, namely of Florida Statute §688.001 et seq.

129.   Defendant's wrongful acts are damaging the Plaintiff.

130.   Defendant's wrongful acts are causing the Plaintiff to be irreparably and continuously harmed.

131.   Absent immediate Court intervention the Defendant will continue to irreparably harm the Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against the Defendant for Plaintiff's actual damages, for treble damages associated with civil theft, punitive damages associated with Defendant's acts of fraud and/or misappropriation of trade secrets, the full measure of statutory damages as set out in 15 U.S.C. §1125(d) for Defendant's acts of cybersquatting, an award of attorneys' fees as permitted by 15 U.S.C. §1117, Fla.Stat §688.001 et seq., and Fla.Stat. §772.11, an award of costs, and such additional relief as the Court deems just and proper.

In addition, the Plaintiff requests that the Court grant the Plaintiff immediate temporary, preliminary,      and      permanent      injunctive      relief      awarding      transfer      of      the www.exclusivemotoring.com   and   www.exclusivemotoringworldwide.com   domain   names,

ordering return of the wheel-take-offs, the laptop computer, and the Customer and Vendor Datatbase, prohibiting the Defendant from further breaching the Non-Compete Agreement, prohibiting the Defendant from holding himself out as the Plaintiff or otherwise as "Exclusive Motoring" or any similar names, from infringing on the Plaintiff's trademarks, or from otherwise using any name, phrase, or device in commerce that is likely to create confusion as between the Plaintiff and the Defendant among the consuming public, and prohibiting the Defendant from further use of the Customer and Vendor Database.

### **Jury Demand**

Plaintiff demands trial by jury of all claims so triable.

Dated November 18, 2011

Respectfully submitted,


By: _s/GUSTAVO SARDIÑA_ _

Gustavo Sardiña
Florida Bar No. 31162
Email: gustavosardina@gmail.com
LAW OFFICE OF GUSTAVO SARDIÑA
1551 Murcia Avenue
Coral Gables, Florida 33134
Tel.: (305) 909-4405
**Counsel for the Plaintiff**