EMW

# CONFIDENTIAL SETTLEMENT AGREEMENT
# AND GENERAL RELEASE

This Confidential Settlement Agreement And General Release ("Agreement") is made this 27th day of June, 2012, by and among Exclusive Motoring Worldwide, Inc. ("EMW"), Rolando Ramirez ("Ramirez"), Victor Ramirez ("V.Ramirez"), Doral Collision Center, Inc. ("Doral Collision")(collectively, EMW, Ramirez, V.Ramirez and Doral Collision may be referred to as "EMW Parties"), Alex Vega ("Vega"), Auto Couture, Inc. ("Auto Couture"), Aymara Vega ("A.Vega"), The Auto Firm, Corp. ("The Auto Firm")(collectively, Vega, Auto Couture, A.Vega and The Auto Firm may be referred to as "Vega Parties") (collectively, the EMW Parties and Vega Parties may be referred to as "Parties"), and Colony Insurance Company ("Colony").

## RECITALS

WHEREAS, EMW asserted claims against Vega in the action styled as *Exclusive Motoring Worldwide, Inc. v. Vega*, U.S. District Court (S.D. Fla.) Case No. 11-24091-CIV-LENARD/O'SULLIVAN (the "Litigation"); and

WHEREAS, Vega and Auto Couture asserted claims against the EMW Parties in the Litigation; and

WHEREAS, EMW and Doral Collision have sought leave of Court to assert additional claims against the Vega Parties; and

WHEREAS, the EMW Parties and Vega Parties have vigorously denied any liability whatsoever and contested each other's claims; and

WHEREAS, the EMW Parties and Vega Parties participated in a Court-Ordered settlement conference before The Honorable William C. Turnoff, United States Magistrate Judge, and as a result of their negotiations, reached a good faith settlement of their disputes; and

WHEREAS, the EMW Parties and Vega Parties negotiated the terms of this Agreement at arm's length; and

WHEREAS, the EMW Parties and Vega Parties now desire to memorialize the resolution of their disputes as set forth in this Agreement.

NOW, THEREFORE, for the mutual consideration set forth herein, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

1. *Explanation and Intent.* The foregoing recitals are true and correct and are incorporated herein by reference.

2. *Resolution of Disputes.*

   2.1. *Trademarks.* The Vega Parties shall immediately cease all use of the "Exclusive Motoring" and "Exclusive Motoring Worldwide" trademarks (the "EMW Trademarks"), and any confusingly similar trademarks. The Vega Parties shall refrain from adopting and using any trademarks that are confusingly similar to the EMW Trademarks. The Vega Parties shall refrain from using any fictitious names that are confusingly similar to the EMW Trademarks. The Vega Parties shall refrain from interfering with EMW's use of the EMW Trademarks, and refrain from interfering with EMW's efforts to secure registrations for the EMW Trademarks and any similar trademarks that EMW may adopt in the future. The Vega Parties shall not attempt to register any trademarks that are confusingly similar to the EMW Trademarks.

   2.2. *Internet Domain Names.* Within fourteen (14) days of the date of this Agreement, Vega shall transfer the domain names ExclusiveMotoring.com, ExclusiveMotorsWorldwide.com, and ExclusiveMotoringWorldwide.com to EMW. If additional, similar domain names are discovered after the execution of this Agreement, they shall also be transferred to EMW within two (2) weeks of notice. The Vega Parties shall refrain from registering any other domain names that incorporate or are otherwise confusingly similar to the EMW Trademarks or domain names transferred pursuant to this Section.

   2.3. *Return of Website Information.* Within the earlier of fourteen (14) days of the execution of this Agreement or by whatever date Web.com permits Vega to access the EMW website, Vega shall transfer the files comprising the design and tree structure of the EMW website as it existed prior to Vega's departure from EMW. The files are currently maintained by Web.com, and Vega has not modified the files or structure since November 1, 2011.

   2.4. *Trade Secrets.* The Vega Parties shall not use or disclose any of Doral Collision's and EMW's financial information, accounting information, invoices, price lists, customer and vendor information. This shall not apply to any information covered by Section 2.9 below.

   2.5. *Removal of EMW's Data from other hard drives.* To the extent that the Vega Parties have any data from EMW or Doral Collision, the Vega Parties shall purge and destroy all such data within fourteen (14) days of the execution of this Agreement. The Vega Parties shall file sworn affidavits under penalty of perjury that all such data has been purged and destroyed (including general descriptions of the data sources searched to locate such data) with such affidavits to be filed within twenty-one (21) days of the execution of this Agreement.

   2.6. *Litigation to be Dismissed; Court to Retain Jurisdiction.* The Parties acknowledge and agree that they shall request that the Court retain jurisdiction to enforce the terms of the Agreement. A.Vega and The Auto Firm stipulate to the Court's

jurisdiction for purposes of the enforcement of this Agreement, and they waive any and all defenses based upon lack of jurisdiction. Within seven (7) days of the date of execution of this Agreement, the Parties shall file a joint motion for dismissal of the action with prejudice, which stipulated dismissal shall be expressly conditioned upon the Court's reservation of jurisdiction to enforce this Agreement. The Parties shall also request that the Court accept the affidavits to be filed pursuant to this Agreement.

2.7. *Parties To Discontinue Use Of Triangle-Shaped Design.* The Parties shall immediately discontinue all use of a triangle-shaped design in connection with their trademarks, including without limitation the following designs:



Notwithstanding the foregoing, EMW and The Auto Firm shall have four (4) weeks (or such time as may be necessary if the removal of signage is delayed by the municipal permitting process) to remove the triangle-shaped design as building signage. The Parties shall refrain from adopting and using any triangle-shaped design in the future. Other than removing building signage, the Parties acknowledge that this restriction shall not require the Parties to make any effort to remove from circulation any previous use of the triangle-shaped design, including license plate frames once installed on customers' automobiles.

2.8. *Memorabilia To Be Returned.* Within fourteen (14) days of the execution of this Agreement, EMW shall allow Vega to pick up all of the memorabilia identified in Exhibit "B" to the Counterclaim that Vega brought from Auto Couture and which is in EMW's possession. Vega shall give at least twenty-four (24) hours notice of when he will pick up the memorabilia.

2.9. *Pre-EMW Information.* The Parties shall be free to use any information that Vega caused or permitted to be loaded on EMW's server. All Parties shall have the right to use and disclose such information.

2.10. *Notice of Vega's Departure from EMW; Use of Website Photographs.* For a period of one hundred twenty (120) days following the execution of this Agreement, EMW shall include a reference on its website (once Vega transfers the domain names and website files identified above to EMW) that Vega is no longer affiliated with EMW, and may be contacted at The Auto Firm (including the phone number, 305-343-2539, and e-mail address for Vega, Alex@x305.com). The notice about Vega shall appear in a banner across the top of the page in lettering no smaller than the typical text appearing on

the rest of the page. Notwithstanding the foregoing, the EMW website may not go live until such time as EMW has removed references and/or photographs of vehicles that were customized prior to January, 2011. However, EMW shall have a right to use any photographs depicting vehicles that were worked on by EMW at any time after January, 2011. Likewise, the Vega Parties shall not publish references and/or photographs of vehicles that were customized by EMW.

2.11. *Property Identified In Bill of Sale.* All property identified in the Bill of Sale and the referenced Exhibit "A", which collectively are an exhibit to the Amended Complaint filed in the Litigation, including without limitation all property that Auto Couture and/or Vega released to EMW or Doral Collision, shall be deemed to be the property of Doral Collision without any further payment or consideration to the Vega Parties.

2.12. *Ownership of EMW.* Ramirez asserts that Vega never had any ownership interest in EMW, and that he was never a partner of Ramirez. Notwithstanding Vega's contention to the contrary, Vega acknowledges that Ramirez is the sole and exclusive owner of EMW. Vega hereby waives and releases any claim that he is an owner of EMW, that he has a current or contingent ownership interest in EMW, or is otherwise entitled to receive an interest in EMW or any of EMW's revenues or profits or from any other venture with Ramirez.

2.13. *Vega To Be Released From Non-Compete Agreement.* Vega is hereby released from the non-compete obligations in the Non-Compete Agreement attached to EMW's Amended Complaint filed in the Litigation.

2.14. *Acknowledgement of Closing of Auto Couture's Business.* Auto Couture acknowledges that it closed its business in or about January, 2011, and that it has no intention of re-opening its business in the future. Within fourteen (14) days of the execution of this Agreement, Auto Couture shall cancel the fictitious name registration that it made with the State of Florida or elsewhere, and shall refrain from registering the same or similar fictitious name in the future.

2.15. *Return of Property and Records.* To the extent that the Vega Parties have any property, documents, physical files or other paperwork belonging to EMW or Doral Collision, the Vega Parties shall return all such property, documents, physical files or other paperwork to EMW and Doral Collision within fourteen (14) days of the execution of this Agreement. The Vega Parties shall file sworn affidavits under penalty of perjury that all such property, documents, physical files or other paperwork have been returned, with such affidavits to be filed within twenty-one (21) days of the execution of this Agreement.

2.16. *Access to E-Mail; E-Mail Forwarding.* Within fourteen (14) days of the execution of this Agreement, Vega shall provide EMW with access to the e-mail accounts at Go Daddy that were established for and used by various EMW employees prior to

Vega's departure from EMW on October 28, 2011. For a period of one hundred twenty (120) days from the execution of this Agreement (and once Vega provides EMW with access to the e-mail accounts and returns the domain names), EMW shall set up e-mail forwarding so that e-mail to Alex@ExclusiveMotoring.com is forwarded to Alex@x305.com.

2.17. *Use of Keywords.* The Vega Parties shall refrain from using the EMW Trademarks as keywords in connection with any Internet advertising or search engines.

2.18. *Use of Photographs.* Neither the Vega Parties nor the EMW Parties shall use any photographs in any media depicting each other. However, this restriction shall not prevent the Parties from using photographs which have been cropped so as to obscure or render unidentifiable to the general public the other Parties.

3. *Payment; Taxes.*

3.1. *Settlement Funds.* Within fifteen (15) days of the execution of this Agreement, EMW's insurer, Colony, shall deliver to counsel for Vega a check payable to the "Jose Antonio Llerena, P.A. Trust Account" in the amount of twenty thousand dollars ($20,000.00). Within fifteen (15) days of the execution of this Agreement, the EMW Parties shall deliver to counsel for Vega a check payable to the "Jose Antonio Llerena, P.A. Trust Account" in the amount of five thousand dollars ($5,000.00). The Settlement Funds referenced in this section are in settlement of all claims and disputes the Vega Parties have asserted (or could have asserted) in the Litigation or any other civil action.

3.2. *Taxes.* The Vega Parties shall complete and deliver to counsel for the EMW Parties an Internal Revenue Service ("IRS") form W-9, and the sums to be paid under this Agreement will be reported to the IRS.

3.3. *No Recovery of Fees or Costs.* The EMW Parties shall not seek to recover their attorney's fees or costs in connection with the Litigation from the Vega Parties and vice versa. However, nothing in this paragraph shall prevent, preclude or otherwise limit the EMW Parties' ability to pursue claims against, and recover legal fees and disbursements incurred in connection with the Litigation or the disputes resolved by this Agreement from their insurance carriers and agents, including without limitation, any sums in defense of claims and fees incurred in connection with the Litigation.

3.4. *No Recourse by EMW.* EMW shall not seek to recover from Colony the five thousand dollars ($5,000.00) that it pays pursuant to Section 3.1 above, and specifically waives any right it might have to seek such recovery. However, nothing in this provision or this Agreement shall preclude the EMW Parties from seeking to recover legal fees, costs and other litigation-related disbursements, including expert fees, incurred in connection with the Litigation or the disputes resolved by this Agreement.

Page 5 of 12 page Confidential Settlement Agreement
And General Release

4.  *General Releases; Limitations; Covenant Not To Sue.*

   4.1. *General Release by Vega Parties.* The Vega Parties, on their own behalf and on behalf of any and all successors, heirs, assigns, affiliates, current or former officers, directors, employees, agents, parents, subsidiaries, shareholders, attorneys, and related entities (collectively, "Vega Releasors") hereby knowingly and voluntarily release and forever discharge the EMW Parties, Colony, their former and current parents, predecessors, affiliates, subsidiaries, shareholders, and former and current directors, officers, agents, employees, representatives, attorneys, insurers, and all successors and assigns (collectively, "EMW Releasees") from any and all liabilities, claims, actions, losses, contracts, agreements, obligations (excepting only those undertaken in this Agreement), debts, understandings or any other damages, from any claims for contribution or indemnity that the Vega Releasors may have against EMW Releasees, up to and including the date of this Agreement, including without limitation any and all liabilities, claims, actions, losses or any other damages arising out of, which hereinafter may arise out of, or which are otherwise related to or which could have been raised in the Litigation. The Vega Releasors acknowledge that this general release applies to all claims including those claims of which the Vega Releasors may not be aware and which may not be mentioned in this Agreement. The Vega Releasors further acknowledge that this General Release is irrevocable.

   4.2. *General Release by EMW Parties.* The EMW Parties, on their own behalf and on behalf of any and all successors, heirs, assigns, affiliates, current or former officers, directors, employees, agents, parents, subsidiaries, shareholders, attorneys, and related entities (collectively, "EMW Releasors") hereby knowingly and voluntarily release and forever discharge the Vega Parties, their former and current parents, predecessors, affiliates, shareholders, subsidiaries and former and current directors, officers, agents, employees, representatives, attorneys, insurers, and all successors and assigns (collectively, "Vega Releasees") from any and all liabilities, claims, actions, losses, contract, agreements, obligations (excepting only those undertaken in this Agreement), debts, understandings or any other damages, from any claims for contribution or indemnity that the EMW Releasors may have against the Vega Releasees, up to and including the date of this Agreement, including without limitation any and all liabilities, claims, actions, losses or any other damages arising out of, which hereinafter may arise out of, or which are otherwise related to or which could have been raised in the Litigation. The EMW Releasors acknowledge that this general release applies to all claims including those claims of which the EMW Releasors may not be aware and which may not be mentioned in this Agreement. The EMW Releasors further acknowledge that this General Release is irrevocable.

   4.3. *Limitation On Scope Of Releases.* The Parties acknowledge that the EMW Releasees are still or may be pursuing claims against their insurance carriers and agents. Nothing in the releases contemplated in this Section 4 shall prevent, preclude or otherwise limit the EMW Releasees ability to pursue claims against, and recover from, their insurance carriers and agents. However, the EMW Releasees waive any claims they

Page 6 of 12 page Confidential Settlement Agreement
And General Release



might otherwise have against Colony relating to the claims made by Vega which are the subject of the Litigation except claims they might make against Colony for the recovery of legal fees, costs and disbursements, including expert fees, incurred in connection with the Litigation, and which are hereby reserved.

    4.4. *Covenant Not To Sue.* The Vega Parties shall not, at any time after the execution of this Agreement, assert claims, sue, or bring any legal actions against the EMW Parties that accrued in the past, exist now, may exist, or which may arise or accrue in the future, in connection with any issues raised in the Litigation or which could have been raised in the Litigation, or which otherwise relate to issues resolved in this Agreement. The EMW Parties shall not, at any time after the execution of this Agreement, assert claims, sue, or bring any legal actions against the Vega Parties that accrued in the past, exist now, may exist, or which may arise or accrue in the future, in connection with any issues raised in the Litigation or which could have been raised in the Litigation, or which otherwise relate to issues resolved in this Agreement.

    4.5. *Future Claims And Unknown Claims.* The Parties are aware that they may hereafter discover claims presently unknown or suspected or facts in addition to or different from those which they know or believe to be true with respect to the matters released pursuant to this Agreement. Nevertheless, it is the intention and agreement of the Parties in providing the releases pursuant to this Agreement to fully, finally and forever settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist in the future, or might have existed, known or unknown, in relation to the Litigation.

    5. *No Admission Of Wrongdoing.* Nothing in this Agreement shall constitute an admission of wrongdoing on the part of the Parties. The Parties deny liability, and that any sums paid under this Agreement are in settlement of disputed claims and solely for the purpose of buying peace.

    6. *Representations And Warranties; Indemnification.*

    6.1. *Representations By The Vega Parties.* The Vega Parties represent and warrant that (i) they enter this Agreement freely, without coercion or duress, and based upon their own independent judgment; (ii) in entering this Agreement, they have not relied upon any representation not expressly stated in this Agreement; (iii) the person(s) executing this Agreement on behalf of the Vega Parties have full and complete authorization to bind the Vega Parties, their heirs, successors, former and current officers, directors, shareholders, employees, agents and assigns; (iv) the Vega Parties have full and complete authorization to grant the rights contemplated under this Agreement; (v) they have been represented by counsel of their choice in the negotiation and preparation of this Agreement and also have had the opportunity to consult with the experts and advisors of their choice; (vi) they have read this Agreement completely and are fully aware of its contents and legal effect; and (vii) this Agreement recites the sole consideration for this Agreement.

6.2. *Representations By The EMW Parties.* The EMW Parties represent and warrant that (i) they enter this Agreement freely, without coercion or duress, and based upon their own independent judgment; (ii) in entering this Agreement, they have not relied upon any representation not expressly stated in this Agreement; (iii) the person(s) executing this Agreement on behalf of the EMW Parties have full and complete authorization to bind the EMW Parties, their heirs, successors, former and current officers, directors, shareholders, employees, agents and assigns; (iv) the EMW Parties have full and complete authorization to grant the rights contemplated under this Agreement; (v) they have been represented by counsel of their choice in the negotiation and preparation of this Agreement and also have had the opportunity to consult with the experts and advisors of their choice; (vi) they have read this Agreement completely and are fully aware of its contents and legal effect; and (vii) this Agreement recites the sole consideration for this Agreement.

7. *Confidentiality.* The Parties and their counsel agree that all terms of this Agreement shall remain confidential except as specified herein. Notwithstanding any other term of this Agreement, each party may: (i) disclose any information which is otherwise publicly available; (ii) disclose any information to Colony and their insurance agents and brokers; and (iii) disclose any term and/or condition of this Agreement as required by law; provided, however, in such event all reasonable measures shall be taken to safeguard the confidential nature of such disclosures. If a party or their counsel is required to disclose any confidential information, the disclosing party shall promptly provide all other Parties with written notice of the required disclosure no less than ten (10) business days prior to such anticipated disclosure (or as soon as reasonably practicable if less than ten (10) business days' notice is given to the disclosing party), and shall reasonably assist the other party in its attempts to obtain confidential treatment of such information, including through entry of a protective order or other legitimate means.

8. *Non-Disparagement.* The Parties covenant never to disparage or speak ill of any other of the Parties, or their products, services, affiliates, subsidiaries, officers, directors, employees or shareholders, and will take reasonable steps to prevent and will not knowingly permit any of the Parties' respective employees or agents to, disparage or speak ill of such persons. The Parties shall refrain from encouraging any third parties to commence investigations, lawsuits, or to otherwise assert any claims against any of the Parties.

9. *Interpreting The Agreement.*

9.1. *Entire Agreement; Construction; Modification.* This Agreement sets forth the entire agreement and understanding between the Parties hereto and supersedes all prior understandings, agreements, and documentation relating to the subject matter hereof. This Agreement cannot be amended, modified or changed orally. If any provision of this Agreement is found to be contrary to law or otherwise invalid, void or unenforceable, it shall be deemed omitted and shall not affect the remaining terms of this Agreement, which shall remain in full force and effect. This Agreement may not be altered or amended except by a written instrument signed by all Parties. Any written amendments or changes shall be effective only after signed by all Parties.

9.2. *Force Majeure.* None of the Parties shall be liable for any failure or delay in its performance due to causes beyond such party's reasonable control, including without limitation: acts of God, fire, flood, hurricanes, or other catastrophes; any law, order, regulation, direction, action, or request of any governmental entity or agency, or any civil or military authority; national emergencies, insurrections, riots, wars; unavailability of rights-of-way or materials; or strikes, lock-outs, work stoppages, or other labor difficulties.

9.3. *Non-Waiver.* No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

9.4. *Originals; Multiple Counterparts.* A facsimile copy of this Agreement and any signatures hereon shall be considered for all purposes as originals. This Agreement may be executed in multiple counterparts, all of which taken together shall constitute one, single agreement between the Parties.

9.5. *Notifications.* Any notice intended for any Party shall be deemed to be validly given if it is in writing and sent by Federal Express, United Parcel Service, or registered U.S. Mail to such Party's address set forth below, or to any other address that the Party in question has directed in writing to the other Party. If a Party sends a notice via electronic mail and requests an electronic confirmation of receipt and the other provides such confirmation, the notice shall be deemed validly delivered.

   To the EMW Parties:

     Exclusive Motoring Worldwide, Inc.
     2101 NW 97th Avenue
     Doral, Florida 33172

     With a copy to:

     Jeffrey D. Feldman
     Feldman Gale, P.A.
     One Biscayne Tower, 30th Floor
     2 South Biscayne Boulevard
     Miami, Florida 33131



To the Vega Parties:

> Alex Vega
> 1525 NW 93 Avenue
> Miami, Florida 33172

With a copy to:

> Jose Antonio Llerena
> Jose Antonio Llerena, P.A.
> 2701 S. Bayshore Drive, Suite 300
> Coconut Grove, Florida 33133

To Colony:

> Colony Insurance Company
> P.O. Box 469012
> San Antonio, Texas 78246

With a copy to:

> Larry I. Gramovot
> Gramovot & Takacs, P.L.
> 1400 Village Square Blvd., No. 3-405
> Tallahassee, Florida 32312-1231

9.6. *Neutral Construction.* The Parties acknowledge that this Agreement was negotiated fairly between them at arm's length and that the final terms of this Agreement are the product of the Parties' negotiations. Each party warrants and represents that it has sought, and received, legal counsel of its own choosing regarding the contents of this Agreement and the rights and obligations affected hereby. The Parties agree that this Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Agreement therefore should not be construed against a party or parties on the grounds that the party or parties drafted or was/were more responsible than the other party, for drafting the provision(s).

9.7. *Authority to Enter Into Agreement.* The Parties and/or their representatives signing this Agreement hereby acknowledge and represent that they have full authority to sign, and enter into, this Agreement.

9.8. *Binding Effect.* By signing this Agreement, the signatories hereby bind themselves and their successors, heirs, assigns, affiliates, current or former officers, directors, employees, agents, parents, subsidiaries, shareholders, attorneys, and related entities.

9.9. *Governing Law; Dispute Resolution.* This Agreement shall be construed and governed by the laws of the State of Florida (without regard to its principles regarding conflict of laws). In any dispute relating to the Parties hereto or otherwise arising out of this Agreement, including without limitation any dispute regarding the interpretation of this Agreement, the Parties shall submit such dispute to Judge Turnoff. Judge Turnoff shall have the authority to render a binding decision on any such dispute, and the Parties agree to be bound by Judge Turnoff's decision(s). In the event that Judge Turnoff is not available to resolve any such dispute, the dispute shall be submitted to Judge O'Sullivan, and the Parties agree to be bound by Judge O'Sullivan's decision(s).

✳

Exclusive Motoring Worldwide, Inc.

By: _____
   Authorized Representative

Auto Couture, Inc.

By: _____
   Authorized Representative

Doral Collision, Inc.

By: _____
   Authorized Representative

The Auto Firm, Corp.

By: _____
   Authorized Representative

_____
Rolando Ramirez

_____
Alex Vega

_____
Victor Ramirez

_____
Aymara Vega

Colony Insurance Company

By: _____
   Authorized Representative

✳ The prevailing party in any proceeding to enforce this Agreement shall recover its reasonable legal fees and costs from the non-prevailing party.

Page 11 of 12 page Confidential Settlement Agreement
And General Release

9.9.    *Governing Law, Dispute Resolution.* This Agreement shall be construed and governed by the laws of the State of Florida (without regard to its principles regarding conflict of laws). In any dispute relating to the Parties hereto or otherwise arising out of this Agreement, including without limitation any dispute regarding the interpretation of this Agreement, the Parties shall submit such dispute to Judge Turnoff. Judge Turnoff shall have the authority to render a binding decision on any such dispute, and the Parties agree to be bound by Judge Turnoff's decision(s). In the event that Judge Turnoff is not available to resolve any such dispute, the dispute shall be submitted to Judge O'Sullivan, and the Parties agree to be bound by Judge O'Sullivan's decision(s).

\*

Exclusive Motoring Worldwide, Inc.                    Auto Couture, Inc.

By: _____                By: _____
    Authorized Representative                           Authorized Representative

Doral Collision, Inc.                                  The Auto Firm, Corp.

By: _____                By: _____
    Authorized Representative                           Authorized Representative


_____                    _____
Rolando Ramirez                                        Alex Vega


_____                    _____
Victor Ramirez                                         Aymara Vega


Colony Insurance Company

By: _____
    Authorized Representative

\* The prevailing party in any proceeding to enforce this Agreement shall Recover its reasonable legal fees and costs from the non-prevailing party.

Page 11 of 12 page Confidential Settlement Agreement
And General Release

9.9. *Governing Law; Dispute Resolution.* This Agreement shall be construed and governed by the laws of the State of Florida (without regard to its principles regarding conflict of laws). In any dispute relating to the Parties hereto or otherwise arising out of this Agreement, including without limitation any dispute regarding the interpretation of this Agreement, the Parties shall submit such dispute to Judge Turnoff. Judge Turnoff shall have the authority to render a binding decision on any such dispute, and the Parties agree to be bound by Judge Turnoff's decision(s). In the event that Judge Turnoff is not available to resolve any such dispute, the dispute shall be submitted to Judge O'Sullivan, and the Parties agree to be bound by Judge O'Sullivan's decision(s).

\*

Exclusive Motoring Worldwide, Inc.

By: _____
   Authorized Representative

Auto Couture, Inc.

By: _____
   Authorized Representative

Doral Collision, Inc.

By: _____
   Authorized Representative

The Auto Firm, Corp.

By: _____
   Authorized Representative

_____
Rolando Ramirez

_____
Alex Vega

_____
Victor Ramirez

_____
Aymara Vega

Colony Insurance Company

By: _____
   Authorized Representative

\* The prevailing party in any proceeding to enforce this Agreement shall recover its reasonable legal fees and costs from the non-prevailing party.

Page 11 of 12 page Confidential Settlement Agreement
And General Release

Counsel for the Vega Parties

Jose Antonio Llerena, P.A.
2701 S. Bayshore Drive, Suite 300
Coconut Grove, Florida 33133

By: _____
Jose Antonio Llerena

Counsel for Colony

Gamovot & Takacs, P.A.
1400 Village Square Blvd., No. 3-405
Tallahassee, Florida 32312-1231

By: _____
Larry J. Gamovot

Counsel for the EMW Parties

Feldman Gale, P.A.
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131

By: _____
Jeffrey D. Feldman

Luks, Santaniello, Petrillo & Jones
110 Southeast 6th Street, 20th Floor
Fort Lauderdale, Florida 33301

By: _____
David A. Lipkin